LEVIN H. CAMPBELL, Chief Judge.
 

 This appeal raises the question of the continued existence of the First Circuit Bankruptcy Appellate Panels after the expiration of the stay of judgment in
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).
 

 The Massachusetts Department of Public Welfare (“the Department”) commenced an adversary proceeding in the United States Bankruptcy Court for the District of Massachusetts against the debtor nursing homes
 
 [1]
 
 on January 8, 1982. The Department sought a declaration permitting it to continue making adjustments to the nursing
 
 *28
 
 homes’ Medicaid payments during the pend-ency of reorganization. The bankruptcy court entered a final order adverse to the Department on September 30, 1982. 24 B.R. 256. The Department filed a notice of appeal to the First Circuit Bankruptcy Appellate Panel on October 4, 1982. On June 15, 1983, the appellate panel dismissed the appeal, holding that as a logical extension of the Supreme Court’s reasoning in
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), it lacked any jurisdiction. 30 B.R. 56. The Department appeals, arguing that it should not be denied an opportunity for appellate review.
 

 The Bankruptcy Reform Act of 1978 established a system of bankruptcy courts, 28 U.S.C. § 151, with jurisdiction independent of the district courts, 28 U.S.C. § 1471. Pub.L. No. 95-598, §§ 201(a), 241(a); 92 Stat. 2549, 2657, 2668-69. As an optional alternative to appellate review by the district courts, the Act authorized the circuit councils to order bankruptcy appellate panels comprised of three bankruptcy judges to hear appeals from the bankruptcy courts. 28 U.S.C. § 160. The circuit council for the First Circuit, acting on February 28, 1980, was one of two circuits to order application of this section.
 

 In
 
 Marathon,
 
 the Supreme Court struck down the expansive jurisdiction conferred upon the bankruptcy courts by the Bankruptcy Reform Act of 1978. 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598.
 
 Marathon
 
 was decided on June 28,1982, but the Court applied its decision only prospectively, staying judgment until October 4, 1982.
 
 Id.
 
 at 88, 102 S.Ct. at 2880. The stay was subsequently extended until December 24, 1982. 51 U.S.L.W. 3259 (Oct. 5, 1982). As the expiration of the stay approached and Congress failed to act, the Administrative Office of the United States Courts, at the direction of the Judicial Conference of the United States, undertook the drafting of a model emergency rule for continued operation of the bankruptcy court system after the stay.
 
 See
 
 Sample Order and Model Rule, 11 U.S.C. (West Supp.1983). The circuit councils were requested to order each of the district courts within their respective circuits to promulgate this model rule. On December 22, the circuit council for the First Circuit ordered the district courts in this circuit to adopt the rule, and on December 24, 1982, the District Court for the District of Massachusetts complied.
 

 The bankruptcy court’s final order in the instant case, dated September 30,1982, was issued prior to promulgation of any emergency rule, during pendency of the Supreme Court’s stay of its judgment in
 
 Marathon.
 
 The notice of appeal, filed October 4, 1982, also predated the expiration of the stay. It was not, however, until June 1983, well after the stay had expired, that the bankruptcy panel dismissed this appeal, reasoning that if Article I bankruptcy courts are prohibited under
 
 Marathon
 
 from exercising trial level jurisdiction over the broad range of issues encompassed by 28 U.S.C. § 1471, then panels comprised of those same Article I judges cannot decide the same broad range of issues at the appellate level.
 

 The transition sections of the Bankruptcy Reform Act, effective until April 1, 1984, provide that an appeal from a judgment, order, or decree of a bankruptcy court shall be taken
 

 (A) if the circuit council of the circuit in which the bankruptcy judge sits so orders for the district in which the bankruptcy judge sits, ... to a panel of three bankruptcy judges appointed in the manner prescribed by section 160 of title 28 of the United States Code ...;
 

 (B) if the parties to the appeal agree to a direct appeal to the court of appeals for such circuit, then to such court of appeals; or
 

 (C) to the district court for the district in which the bankruptcy judge sits.
 

 Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, § 405(c)(1), 92 Stat. 2549, 2685. Jurisdiction to hear appeals during the transition period is vested solely in the appellate panels if such panels have been adopted for the district.
 
 Id.
 
 § 405(c)(2), 92 Stat. 2685;
 
 Id.
 
 § 241(a), 92 Stat. 2671 (codi
 
 *29
 
 fied at 28 U.S.C. § 1471). Otherwise, “district courts for districts for which panels have not been ordered appointed under section 160 of this title shall have jurisdiction of appeals .. . . ” Id § 238, 92 Stat. 2668 (codified at 28 U.S.C. § 1334);
 
 Id.
 
 § 405(c)(2), 92 Stat. 2685.
 

 Marathon
 
 suggests a serious question regarding the constitutionality of the bankruptcy appellate panels after expiration of the stay. We do not reach that question, however, since we believe that the order of the Circuit Council for the First Circuit requiring the district courts to adopt the emergency rule had the implicit effect of withdrawing from those panels their earlier conferred authority to hear appeals.
 
 [2]
 

 Section (d)(1) of the prescribed emergency rule grants to bankruptcy judges the power to perform necessary duties in cases referred by the district court, “except that the bankruptcy judges may not conduct: ... (C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge.”
 
 [3]
 
 Section (e) of the rule provides for review of bankruptcy judges’ judgments and orders only by the district court.
 

 The emergency rule thus flatly forbids bankruptcy judges to “conduct” an appeal from the judgments, orders, decrees and decisions of a bankruptcy judge, providing instead that those matters “shall be transferred to a district judge.” In directing the district courts to adopt such a rule, we think the circuit council for the First Circuit impliedly revoked its previous action, taken on February 28, 1980, ordering that appeals be heard by bankruptcy appellate panels rather than by the district court. To hold otherwise would impute to the circuit council the inconsistent actions of requiring the district courts to adopt a rule eliminating the appellate role of bankruptcy judges, while permitting the bankruptcy judges to continue filling that role.
 

 To be sure, the emergency rule removed the power to conduct appeals only in “referred bankruptcy cases.” Arguably power remained to conduct appeals, like the present, from judgments entered before the
 
 Marathon
 
 stay expired. Given the fact, however, that the emergency rule expressly forbade bankruptcy judges to hear any further appeals, and did so because of the cloud placed upon their authority by
 
 Marathon,
 
 we think the circuit council’s December 22, 1982 order is most reasonably construed as vitiating in its entirety its earlier order endorsing the establishment of panels as an appellate mechanism in this circuit. Had the council, while stripping the panels of most of their jurisdiction, wished to preserve them solely as vehicles to hear appeals from judgments entered before December 24, 1982, it could easily have said so.
 
 [4]
 
 In
 
 *30
 
 stead it was silent. We thus conclude that the circuit council’s order appointing the appellate panels under section 160 was effectively revoked by the order requiring adoption of the emergency rule.
 
 [5]
 

 The dissolution of the appellate panels does not, however, preclude appeal by the Department in this case. We view the Supreme Court’s prospective application of
 
 Marathon
 
 as contemplating full rights to appellate review from all final judgments, orders, or decrees entered by bankruptcy courts prior to the expiration of the stay. The Court expressly rejected retroactive application because it “would surely visit substantial injustice and hardship upon those litigants who relied upon the Act’s vesting of jurisdiction in the bankruptcy courts.” 458 U.S. at 88, 102 S.Ct. at 2880. Other circuit courts have similarly recognized the validity and reviewability of bankruptcy court orders entered during the pendency of the
 
 Marathon
 
 stay.
 
 In re Klapp,
 
 706 F.2d 998, 999 n. 1 (9th Cir.1983);
 
 Gray v. Snyder,
 
 704 F.2d 709, 711 (4th Cir.1983).
 

 While the nursing homes argue strenuously that the Department has entirely lost any opportunity to appeal, such a result would not comport with fundamental fairness. See
 
 Lindsay v. Normet,
 
 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 (1972). The Department was required to file its notice of appeal before the emergency rule was adopted; it had no obvious avenue of appeal other than to the appellate panel. It would be unjust if the Department were now denied an appeal due to the circuit council’s subsequent withdrawal of appellate jurisdiction from the panels. Section (d)(1) of the emergency rule itself evidenced the intent to substitute the district court as the appellate forum in providing that “matters which may not be performed by a bankruptcy judge shall be transferred to a district judge.”
 

 The district courts have jurisdiction to entertain bankruptcy appeals under section 405(c)(1)(C) and section 238 of the Bankruptcy Reform Act, as noted above. Neither of these provisions would seem to have been brought into question by
 
 Marathon
 
 because
 
 Marathon
 
 only rejected the grant of independent jurisdiction to the Article I bankruptcy courts under section 241(a) of the Act. The nursing homes have not raised any challenge to the continued jurisdiction of the district court in bankruptcy matters.
 
 See White Motor Corp. v. Citibank,
 
 704 F.2d 254, 259-61 (6th Cir.1983). The transfer to the district court is therefore jurisdictionally sound.
 

 In these unique circumstances, we do not think the absence of a notice of appeal to the district court is fatal. Appellate jurisdiction was sufficiently secured by earlier filing of the required notice of appeal to the appellate panel. What will now occur is simply a transfer of the ongoing appeal to a tribunal with authority and jurisdiction to take over where the earlier tribunal left off. The district court may hereafter continue, modify or dissolve any existing panel orders, and may issue any special procedural orders it deems appropriate to facilitate a speedy and just resolution of this appeal.
 

 We vacate the dismissal of the appeal by the bankruptcy appellate panel and, pursuant to our supervisory powers, we remand this case to the United States District Court for the District of Massachusetts to decide the appeal on its merits.
 
 [6]
 

 In re Coastal Cable TV, Inc.,
 
 709 F.2d 762, 765 (1st Cir.1983) (vacating an appellate panel decision and remanding to the United States District Court for the District of Rhode Island).
 

 So ordered.
 

 [1]
 

 . Dartmouth House Nursing Home, Inc., Erlin Manor Nursing Home, Inc., and St. John’s Nursing Home, Inc., had each filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Massachusetts on December 31, 1981.
 

 [2]
 

 . While we hold that the circuit council’s order had the implicit effect of disestablishing the bankruptcy appellate panels in this circuit, we also hold that our decision to this effect shall not apply retroactively so as to disturb any actions in other matters taken by those appellate panels between the date of the council’s order and the date of issuance of this court’s mandate herein. Retroactive application of this decision would only result in inequity to parties who have relied on seemingly proper appellate panel actions. Our holding of an implied dissolution of the panels was not clearly foreshadowed by
 
 Marathon
 
 nor by the confusing events before and after the expiration of the stay.
 
 See Chevron Oil Co. v. Huson,
 
 404 U.S. 97, 106-07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).
 

 [3]
 

 . The entire text of section (d)(1) provides:
 

 (1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:
 

 (A) a proceeding to enjoin a court;
 

 (B) a proceeding to punish a criminal contempt—
 

 (i) not committed in the bankruptcy judge’s actual presence; or
 

 (ii) warranting a punishment of imprisonment;
 

 (C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge; or
 

 (D) jury trials.
 

 Those matters which may not be performed by a bankruptcy judge shall be transferred to a district judge.
 

 [4]
 

 .The lack of any express order is to be contrasted with the action taken by the Circuit Council for the Ninth Circuit on December 28, 1982, explicitly ordering their panels to resolve all appeals from judgments entered before the filing of judgment in
 
 Marathon.
 

 [5]
 

 . This holding is not in any way dependent upon the constitutionality of the emergency rule itself, but rather rests upon an implicit revocation of the council’s earlier order creating the appellate panels under 28 U.S.C. § 160.
 

 [6]
 

 . Fifteen cases were docketed with and awaiting decision by the bankruptcy appellate panels at the time the
 
 Marathon
 
 stay expired. Those appeals have been held in abeyance since that time. We direct the clerk of the appellate panels to transfer those fifteen cases to the appropriate district courts for resolution.